## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN C.B.,               :         CIVIL ACTION
         Plaintiff       :
      v.               :
                       :
LEELAND DUDEK,[1]      :
Acting Commissioner of the Social   :
Security Administration,       :
         Defendant     :        NO.  24-6049

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE             May 2, 2025

John C.B. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request for review is denied.

## I.    PROCEDURAL HISTORY[2]

On June 7, 2016, Plaintiff applied for DIB, alleging that his disability commenced on September 29, 2010.  R. 25.  The claim was denied initially; therefore, Plaintiff requested a hearing.  *Id.*  On April 18, 20219, Plaintiff's hearing was convened before Regina L. Warren, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Sherry L. Kristal Turetzky, a

---

[1] Leeland Dudek was appointed as the Acting Commissioner of Social Security, on February 18, 2025.  Pursuant to Rule 25(d)(a) of the Federal Rules of Civil Procedure, Mr. Dudek should be substituted as Defendant in this case.  No further action need be taken to continue this action, pursuant to section 205 of the Social Security Act.  42 U.S.C. § 405(g).

[2] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

vocational expert, ("the VE") testified at the hearing.  *Id.*  On May 29, 2019, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision.  R. 25-33. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on May 14, 2020, making the ALJ's findings the final determination of the Commissioner.  R. 11-13. Plaintiff presently seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    Personal History

Plaintiff was 55 years old on his date last insured ("DLI"), September 30, 2013.  R. 52. During the relevant time, from the alleged onset date to the DLI, Plaintiff lived alone.  R. 68.

B.    Plaintiff's Testimony

At the April 18, 2019 hearing, Plaintiff testified about his limitations.  R. 58-82.  He stated that one reason he was unable to work during the relevant time period, was his poor mental health;

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).

> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).

> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).

> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).

> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

he had documented suicide attempts during this period.[4]  R. 68.  Plaintiff was taking medication for his anxiety and depression.  R. 74.  Panic attacks made it difficult for him to concentrate.  R. 74-75.  Plaintiff also suffered from post-traumatic stress disorder, which did not result from his military service, but, rather, his life after discharge.[5]  R. 81.  During the hearing, when Plaintiff started to cry while describing his mental impairments, the ALJ tried to curtail his testimony about the subject.  R. 67.  Nevertheless, Plaintiff was able to continue.

As a result of a 2009 right knee meniscus tear, Plaintiff could only walk approximately one block, before needing to sit down.  R. 69.  Subsequently, he underwent knee surgery, which removed his torn meniscus; however, the procedure did not resolve his knee pain.  R. 69-70.  Plaintiff was able to stand for approximately three to four minutes at a time; he could sit for approximately fifteen minutes, thereafter, his knee would lock up, causing more pain.  R. 71.  Since 2010, Plaintiff has experienced pain that radiates down his leg, preventing him from walking properly.  R. 72.  He rated his right knee pain at seven to eight out of ten, on a daily basis; prescribed pain medication did not alleviate the  pain.[6]  R. 74.  This pain also made it difficult to concentrate.  R. 73.

During the relevant time, Plaintiff performed no housework; his caseworker and daughter performed those tasks for him.  R. 76.  He was unable to cook any meals at the stovetop but could use a microwave to heat or prepare simple fare.  R. 77-78.

C.    Vocational Testimony

The VE testified that Plaintiff's past job as a coordinator of a skill training program was

---

[4] Unless the court indicates otherwise, Plaintiff's testimony references his condition between the alleged onset date and the DLI.
[5] Plaintiff testified that he was discharged from the Air Force in 2000; he saw combat in 1977.  R. 81-82.
[6] Because Plaintiff had a history of addiction, his doctors were reluctant to prescribe narcotic pain medication.  R. 74.

skilled[7] position, rated as sedentary,[8] but performed at the medium[9] level of exertion.  R. 82-83.[10]

The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, who was limited to medium work, unable to kneel, needed to avoid extreme cold, was capable of simple decision making, and could tolerate occasional interaction with the public.  R. 84.  The VE responded that, although this individual could not perform Plaintiff's past work, R. 85, he could perform other, unskilled[11] work.[12]  R. 85-86.

Next, the ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, who was able to perform the full range of light[13] work.  R. 86.  The VE responded that this individual could perform Plaintiff's past position as coordinator of a skill training program job, as classified.  R. 86-87.  If the same individual was restricted to sedentary work, the VE opined that the same job would be available.  R. 87.  Finally, the VE conceded that, if a person could only perform simple, routine tasks and tolerate only occasional social interaction, they could not perform Plaintiff's past job as a coordinator of a skill training program.  R. 93.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] last met the insured status requirements of the

---

[7] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. … Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[10] Although Plaintiff had other past jobs, the ALJ instructed the VE to disregard them.  R. 87.

[11] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

[12] Because the ALJ does not rely upon these alternative jobs, it is unnecessary to list them.

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

Social Security Act through September 30, 2013.

2.      [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of September 29, 2010 through his date last insured of September 30, 2013 (20 CFR 404.1571 *et seq.*).

3.      Through the date last insured, [Plaintiff] had the following severe impairment: knee degenerative joint disease/osteoarthritis (20 CFR 404.1520(c)).

4.      Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, I find that, through the date last insured [Plaintiff] had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6.      Through the date last insured, [Plaintiff] was capable of performing past relevant work as a coordinator skill training program. This work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565).

7.      [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 29, 2010, the alleged onset date, through September 30, 2013, the date last insured (20 CFR 404.1520(f)).

R. 27, 29-30, 32-33.

## IV.   DISCUSSION

A.      <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially

demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process ("SEP"), the ALJ determined that Plaintiff could perform the full range of light work, which included his past relevant work, as generally performed; hence, he was not disabled. R. 25-33. Plaintiff disputes the ALJ's decision and argues that she reversibly erred by: (1) finding that his mental health impairment was not severe, which negatively impacted her determination of his residual functional capacity ("RFC"); and (2) finding that Plaintiff could perform his past relevant work. Pl. Br. at 4-21. Although Plaintiff has two sections to his brief, resolution of both sections is dependent upon the same question, to wit, did the ALJ err by finding that his mental impairment was not severe? If so, Plaintiff argues that other errors result from the initial error which render the ALJ's decision reversible. *Id.* The Commissioner counters that the ALJ properly reached her non-disability decision. Resp. at 8-19. This court finds that Plaintiff's initial assertion of error lacks merit; hence the others fail as well.

Initially, Plaintiff maintains that the ALJ committed reversible error by finding that his mental impairment was not severe and that this error adversely affected her assessment of his RFC. Pl. Br. at 4-12. Plaintiff goes on to argue that this RFC error adversely affected the ALJ's determination that he could perform his past skilled work. Pl. Br. at 13-21. This court finds that the ALJ did not err when she found that Plaintiff's mental impairment was not severe at step two

7

of the sequential evaluation process ("SEP").  Hence, Plaintiff's subsequent allegations of error lack merit.

In this case, the ALJ found that Plaintiff's depressive disorder was not a severe impairment, in part, because she found that Plaintiff has only mild limitation in all four areas of mental functioning ("the B criteria").  R. 29.  Furthermore, she stated that she would consider limitations caused by Plaintiff's non-severe mental health impairment when determining Plaintiff's RFC and at SEP steps four and five.  R. 29.

Plaintiff maintains that the ALJ erred in finding that his mental health impairment was not severe, arguing that she gave insufficient weight to the opinions of state agency psychological consultant, Melissa Franks, Psy.D.  Pl. Br. at 6-9.  Dr. Franks' opinions concerning Plaintiff's limitations were more restrictive than the ALJ's findings of mild limitation in all four B criteria; for example, Dr. Franks found that Plaintiff had moderate limitation in carrying out detailed instructions, maintaining concentration for extended periods of time, completing a normal workday and workweek without interruption, performing at a consistent pace, and was limited in carrying out short, simple instructions.  Pl. Br. at 6-7 (citing R. 105).  The ALJ afforded Dr. Franks' opinions little weight, because she determined that these opinions were "not supported by or consistent with the record as a whole regarding [Plaintiff's] good response to conservative mental health treatment."  R. 31.  The ALJ supported her conclusion by referring back to her earlier discussion of Plaintiff's mental health treatment prior to the DLI.  *Id.*  That discussion cites treatment notes indicating that Plaintiff was coping well with stressors, had a stable mood, no psychosis or suicidal ideation, could perform daily activities, such as caring for his elderly mother, caring for his own needs, using public transportation, and had positive results from his prescribed medication to control his anxiety and depression.  R. 28 (citing R. 179, 190, 430-38, 444, 453,

456-59, 481, 486, 487-99, 973).

Herein, the ALJ cited to substantial evidence, which is not a great deal of evidence, *Biestek*, 587 U.S. at 103, to support her conclusion that Dr. Franks' opinions were not supported by or consistent with the relevant record.  Hence, there is no basis to find that the ALJ committed an evidentiary error when determining that Plaintiff's mental impairment was not severe.[14]

Furthermore, under the Commissioner's regulations, if a claimant's mental health impairment causes only mild limitation in all four B criteria, the ALJ is permitted to conclude that the mental health impairment is non-severe.  20. C.F.R. § 404.1520a(d)(1).  The ALJ made such findings, based upon her review of the relevant record.  R. 29.  Hence, the ALJ did not commit legal error by finding that Plaintiff's mental health impairment was not severe.  Moreover, if an ALJ finds an impairment non-severe but does not stop the disability determination at SEP step two, any error in finding the impairment non-severe is harmless.  *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007) (non precedential).  Furthermore, the ALJ stated that she was considering limitations from Plaintiff's non-severe mental impairment after SEP step two. R. 29.  Hence, there is no basis to find that the ALJ committed reversible legal error in assessing that Plaintiff's mental impairment was non-severe.  As such, his allegations of further errors, dependent upon the initial one, lack merit as well.

An implementing order and order of judgment follow.

---

[14] Plaintiff argues that there is evidence in the record to suggest that, during the relevant time, he did not cope as well as the ALJ determined.  Pl. Br. at 8-9.  However, this court is not permitted to weigh the evidence.  *Rutherford*, 399 F.3d at 552.  Instead, when reviewing the ALJ's evaluation of record evidence, the only proper inquiry for the court is to determine whether there is substantial evidence to support the ALJ's conclusions.  *Biestek*, 587 U.S. at 102-03. Having concluded that there is, the court's role vis-à-vis the evidence is complete.